**In re NOWAK.**

[Cite as *In re Nowak* (1999), 133 Ohio App.3d 396.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 97–G–2089.

Decided April 26, 1999.

*David P. Joyce,* Geauga County Prosecuting Attorney, and *Dawn M. Gargiulo,* Assistant Prosecuting Attorney, for appellee.

*R. Robert Umholtz,* Geauga County Public Defender, and *Paul J. Mooney,* Assistant Public Defender, for appellant.

---

CHRISTLEY, Presiding Judge.

This is an accelerated calendar case submitted to this court on the briefs of the parties. Appellant, Nowak, appeals the judgment of the Geauga County Juvenile Court finding him guilty of contempt of court, and sentencing him to forty-five days in the Geauga County Safety Center. The following facts are relevant to this appeal.

On January 24, 1992, appellant was adjudicated as a delinquent child by the Geauga County Juvenile Court for an incident that occurred when he was twelve years of age. He was ordered to serve one to forty-five days in the juvenile detention center, which was suspended, provided appellant and his parents cooperated with the Ravenwood Mental Health Center ("Ravenwood"). Specifically, appellant was referred to Ravenwood "for assessment on sexual perpetrators & follow [*sic*] any treatment recommended."

After several years of individual counseling, appellant joined a group therapy session referred to as the STOP program at Ravenwood, beginning in June 1995. He regularly attended meetings until April 1997. On June 5, 1997, the juvenile court filed a summons and order, which stated that appellant, now age nineteen, was to appear and show cause why he should not be held in contempt of court for failure to comply with the court's order of January 24, 1992. No details were set forth by the juvenile court.

On August 5, 1997, appellant filed a motion to dismiss the summons and order on the grounds that it was defective in that it did not set forth with particularity the alleged misconduct. On August 8, 1997, the juvenile court overruled appellant's motion. A hearing was conducted on the contempt motion on August 21, 1997. Appellant failed to appear, but his counsel was present and asked for a continuance. The juvenile court denied the request and proceeded with the hearing.

On August 25, 1997, the juvenile court found appellant to be in contempt of court for failing to abide by its January 24, 1992 order. The forty-five day sentence was in the Geauga County Safety Center. The juvenile court offered appellant the opportunity to purge himself of contempt by enrolling in the STOP program and continuing in the program until completion.

Appellant timely filed a notice of appeal and has set forth three assignments of error.

"1. The Juvenile Court erred to the prejudice of the juvenile appellant in denying his motion to dismiss whereby notice of contempt was defective and in violation of his constitutional rights to due process under the law for receipt of proper notice of contempt.

"2. The juvenile court erred to the prejudice of juvenile Nowak in finding that based on the evidence presented the juvenile was in contempt of court.

"3. The imposition of punishment of forty-five days on the juvenile for contempt of court after the finding of contempt violates the statutory requirements of section 2705.05 of the Ohio Revised Code."

■ We must first note that although the juvenile court treated the instant action as an indirect contempt proceeding, in actuality, this case involved an allegation of a probation violation. It is clear that appellant was placed on probation by the juvenile court on January 24, 1992. Thus, when he allegedly failed to comply with the terms of his probation, the proper action would have been a probation violation proceeding rather than a contempt-of-court hearing. The distinction is important because appellant could not have been found in violation of his probation unless he was present at the hearing. Juv.R. 35(B).

■ This court finds no authority for the juvenile court to proceed in contempt when the issue is a probation violation allegation. R.C. 2151.412(E)(1) allows the court to proceed in contempt for a violation of a journalized case plan. However, that section specifically applies only to the parties involved in cases of abuse, neglect or dependency, temporary or permanent custody, protective supervision, or long-term foster care.

Further, in the prosecution of the violation of probation terms, the only remedy referred to under R.C. 2151.355 is that of a probation revocation.[1]

Juv.R. 35(B) provides:

"The court shall not revoke probation except after a hearing at which the *child shall be present* and apprised of the grounds on which revocation is proposed. The parties shall have the right to counsel and the right to appointed counsel where entitled pursuant to Juv.R. 4(A). Probation shall not be revoked except upon a finding that the child has violated a condition of probation of which the child had, pursuant to Juv.R. 34(C), been notified." (Emphasis added.)

■ Accordingly, because this should have been a probation revocation case, appellant was denied his due process right to be present at the hearing. Thus, this case must be remanded to the juvenile court for a probation revocation hearing that comports with Juv.R. 35(B). The first assignment of error has merit. The juvenile court's finding that appellant was in contempt of court is reversed.

Appellant's other two assignments of error are rendered moot pursuant to App.R. 12(A)(1)(c).

The judgment of the juvenile court is reversed, and the matter is hereby remanded for further proceedings consistent with this opinion, presuming the court still has jurisdiction.

*Judgment reversed.*

EDWARD J. MAHONEY, J., concurs.

WILLIAM M. O'NEILL, J., dissents.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.

WILLIAM M. O'NEILL, Judge, dissenting.

In the second assignment of error, appellant maintains that the state failed to prove beyond a reasonable doubt that he had not complied with the prior court

---

1. Juv.R. 35(B) dealing with probation revocation is modeled after Crim.R. 32.3. In researching the latter rule, we found no authority that indicated that contempt could be a substitute or alternative remedy. However, we note a Wood County case that involved an adult probationer who did not successfully complete counseling for sexual offenders. There the state initially filed a contempt motion; then it withdrew that motion and filed a probation revocation petition. The case proceeded under that premise, without becoming an issue upon appeal. *State v. Puhl* (May 2, 1997), Wood App. No. WD–96–059, unreported, 1997 WL 224972.

order. In deciding this issue, it is necessary to examine the exact language used by the juvenile court in its January 24, 1992 order. There, appellant was referred to Ravenwood "for assessment on sexual perpetrators & follow [*sic*] any treatment recommended."

At the hearing on this matter, the state presented two witnesses. The first witness was appellant's probation officer, Allison Hart. She testified that appellant was in violation of his probation because he had not completed the STOP program at Ravenwood. The other witness to testify was Robert E. Larkin, coordinator of outpatient services at Ravenwood. He stated that appellant entered the STOP program in June 1995 and continued as a regular participant until April 1997. He further testified that as of December 1996, it was the recommendation of the staff at Ravenwood that appellant continue in the STOP program.

Appellant presented evidence that during the two-year period that he was involved in the STOP program, he attended at least *forty-seven group therapy sessions* and was an active participant in each session. Robert Larkin admitted on cross-examination that appellant had made progress in the program, stating, in part:

"In the early months of '97, [Nowak] was showing better skills in being able to identify his feelings, understand his offense cycle, was beginning to talk more openly about his victim, had begun to acknowledge the gender of his victim to the group and was beginning to do a much better job of identifying his angry responses, his hurt responses to people as they left him and they hurt him.

"Those are the kinds of things that we had told him in December that we wanted him focusing on. Those are the kinds of behavior we were expecting to see him demonstrate in order to move through the program, and to be seen as someone who had progressed sufficiently to present a reduced risk at least, for reoffending and to be considered for discharge."

It must also be noted that during the two-year period that appellant participated in the STOP program, he was assigned to at least two different facilitators, whose job it was to lead the group therapy sessions. In April 1997, the facilitator was about to be changed again, which upset appellant. Additionally, appellant, who was almost nineteen years old, was being reassigned to a younger adolescent group because of enrollment numbers. Once the changes occurred, appellant ceased attending the group therapy sessions.

While it is true that the juvenile court *can* retain jurisdiction over an emancipated juvenile, *In re Cox* (1973), 36 Ohio App.2d 65, 65 O.O.2d 51, 301 N.E.2d 907, such a right is not without limitations. It is important to note that this youngster was originally ordered to begin attending assessment and therapy

sessions in 1992, when he was twelve years old. The record is clear that he complied with the court's order at least through 1997. Having attended over forty counseling sessions, it is indeed troubling that the juvenile court would find him in contempt without even hearing his version of the so-called failure to complete the program. Much like a criminal proceeding, a probation violation hearing, at a minimum from a due process standpoint, requires the presence of the accused to begin the hearing.

It is clear that appellant went to Ravenwood for an assessment in accordance with the juvenile court's order of January 24, 1992. It is also clear that appellant participated in the group therapy sessions for almost two years and that he made progress according to the program coordinator. At the time appellant stopped attending the sessions, he was almost nineteen years old, and six and a half years had passed since the incident occurred that led to appellant's probation. Under these circumstances, I would hold that appellant sufficiently complied with the juvenile court's January 24, 1992 order, which was rather vague in that no time limitation was offered, and conclude that appellant was not in contempt of the earlier order, nor had he violated the terms of his probation. Accordingly, it was error for the juvenile court to find appellant to be in contempt of court. Appellant's second assignment of error should be sustained.

To hold a "hearing" now on a new legal theory is inherently unreasonable.